ANDREWS, n.k.a. Brandall, Appellee,

v.

SCOTT PONTIAC CADILLAC GMC, INC., Appellant.

[Cite as *Andrews v. Scott Pontiac Cadillac GMC, Inc.* (1991), 71 Ohio App.3d 613.]

Court of Appeals of Ohio,
Sandusky County.

No. S–89–42.

Decided March 29, 1991.

*Roger D. Paul,* for appellee.

*George L. Kentris,* for appellant.

ABOOD, Judge.

This is an appeal from a judgment of the Sandusky County Court of Common Pleas, in which the trial court granted appellee's motion for summary judgment and ordered rescission of the sale of a new automobile, refund of the purchase price and payment of attorney fees. Appellant sets forth the following assignments of error:

"1. The trial court erred in granting appellee's motion for summary judgment where appellee failed to show that there was no genuine issue as to any material fact and that she was entitled to judgment as a matter of law.

"2. The trial court erred in granting appellee the right of rescission together with the award of attorneys fees, where the evidence establishes that any violation of Chapter 1345 of the Ohio Revised Code resulted from a bona fide error notwithstanding the maintenace [*sic*] of procedures reasonably adopted to avoid the error, thereby limiting appellee's right of recovery to actual, monetary damages."

The facts that are relevant to the issues raised on appeal are as follows. On February 4, 1986, appellee, Sue Andrews, n.k.a. Sue Brandall, purchased a new 1986 Pontiac Sunbird automobile from appellant, Scott Pontiac Cadillac GMC, Inc., through its salesman, Jon W. Frankart. About five months prior to being purchased by appellee, the car had been in an accident while being driven as a demo by one of appellant's salesman and had sustained damage and was repaired. While negotiating the purchase, Frankart told appellee that the car had been in an accident and that the extent of the damage it had sustained was in excess of $500. After the purchase, when appellee learned that the car had actually sustained between $3,900 and $4,000 in damage, she attempted unsuccessfully to return the car and recover the purchase price. On March 7, 1988, appellee filed a complaint in the Sandusky County Court of

Common Pleas, which alleged, among other things, a violation of the Consumer Sales Practice Act ("CSPA"), R.C. Chapter 1345, and requested rescission of the transaction, return of the full purchase price and attorney fees. On April 14, 1988, appellant filed its answer generally denying the allegations contained in appellee's complaint. On September 15, 1989, appellee filed a motion for summary judgment and, on October 10, 1989, appellant filed a memorandum in opposition and the trial court held a hearing on the motion. The evidence before the court consisted of the pleadings, several affidavits, a deposition of appellee taken March 3, 1987, and depositions of Jon W. Frankart and Scott Spitzer taken March 3, 1987 and August 9, 1989.

In her deposition testimony, appellee stated that, before she signed the buyer's order for the purchase of the car, Frankart told her that the car had been in a collision, that it had been repaired and that the damage was to the front end of the car, the hood and the windshield. She stated that when he was asked how much over $500 the damage to the vehicle was, he said " * * * just over $500 * * * approximately five hundred thirty dollars." She testified further that after she purchased the car she began to have difficulties which eventually led her to ask the exact cost of repair. As a result of this inquiry, she was given a copy of the repair estimate from September 1985 which showed that the cost was between $3,900 and $4,000.

In his deposition testimony, Frankart stated that he knew the car had been in a previous accident, that he had seen the damage to the car, that he did not know the extent of the damage sustained, but that he knew the damage was in excess of $500. He testified further that when a new vehicle sustained damage in excess of $500, the policy of the company was to inform prospective purchasers only that the vehicle had sustained damage in excess of $500; that he told appellant the damage to the car was in excess of $500 and that the damage was mostly to the front end; that appellee never asked him for an exact dollar amount of the damage to the car; and that when asked how much more than $500 damage occurred to the vehicle, he told appellee that he didn't know. He also testified that he did not attempt to find out the exact amount of the cost to repair the vehicle because "I didn't think about it," and that from his previous experience he knows that it would be important to a potential customer, as well as to himself if he were buying a car, to know the severity of the damage.

In his deposition testimony, Scott Spitzer stated that he is president of Scott Pontiac Cadillac GMC, Inc. and owns a majority of the stock of the corporation that owns the dealership. He testified that the policy of the company is to inform customers prior to the purchase of a new car, if such is the case, that the car has been in a wreck and has sustained damage in excess of $500; that

it was also company policy not to disclose to the salesman any information as to the cost of the repair other than it being in excess of $500; that he was aware that the exact cost of repair of the car that appellee purchased was between $3,900 and $4,000; that he had not disclosed this amount to Frankart; and that if Frankart had asked him for the information concerning the exact cost of repair, he would have told him. He also testified that he now knows that he must disclose the exact cost of repair to the buyer when the damage is in excess of $300, but he did not know this when appellee purchased the Sunbird, and that the car sold to appellee was a new automobile and had never been titled to anyone other than appellant before being sold to appellee.

In its first assignment of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment. In support, appellant argues that appellee has failed to produce competent evidence that the extent of the damage to the car was between $3,900 and $4,000 and that Ohio Adm.Code 109:4–3–16(B)(14) does not require appellant to reveal the exact dollar amount of the damage.

Appellee responds that the deposition testimony of Scott Spitzer is competent evidence of the extent of previous damage to the car and that the only reasonable reading of Ohio Adm.Code 109:4–3–16(B)(14) requires the disclosure of the cost of repair as well as parts that had to be repaired.

Civ.R. 56(C) provides:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

R.C. 1345.02 prohibits suppliers from committing an unfair or deceptive act or practice in connection with a consumer transaction and provides that an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during or after the transaction. R.C. 1345.05(B)(2) gives the Attorney General the power to promulgate rules defining CSPA violations. The purpose of these rules is, in part, to define with reasonable specificity acts and practices which violate R.C. 1345.02. Ohio Adm.Code 109:4–1–01(A)(2)(a). Pursuant to the power granted by R.C. 1345.05(B)(2), the Attorney General

has promulgated Ohio Adm.Code 109:4–3–16(B)(14), which provides that it shall be a deceptive and unfair act or practice for a dealer, in connection with the advertisement or sale of a motor vehicle, to:

"Fail to disclose prior to the dealer's obtaining signature by the consumer on any document for the purchase of the vehicle, any defect and/or the extent of any previous damage to such vehicle, retail repair cost of which exceeds or exceeded three hundred dollars excluding damage to glass, tires and bumpers where replaced by identical equipment. The above disclosure is required when the dealer has actual knowledge of the defect and/or damage and the vehicle is a new motor vehicle as defined in division (C) of section 4517.01 of the Revised Code[.]"

R.C. 4517.01(C) defines "new motor vehicle" as a motor vehicle " * * * the legal title to which has never been transferred by a manufacturer, remanufacturer, distributor, or dealer to an ultimate purchaser."

The issue presented under this assignment of error is whether, when construing the evidence before the trial court most strongly in appellant's favor, reasonable minds could only conclude that appellant committed an unfair or deceptive act or practice in violation of R.C. 1345.02 by virtue of violating Ohio Adm.Code 109:4–3–16(B)(14).

▮▮▮▮ Upon consideration of the foregoing, this court finds that: (1) Ohio Adm.Code 109:4–3–16(B)(14) clearly provides that a supplier commits an unfair or deceptive act or practice when it has actual knowledge of the previous defect and/or damage to a new motor vehicle and fails to disclose the defect and/or extent of the previous damage, when the retail repair cost of such damage exceeds or exceeded $300; (2) disclosure of " * * * the defect and/or extent of any previous damage to such vehicle * * * " as used in Ohio Adm.Code 109:4–3–16(B)(14) means disclosure of the nature of the defect and the retail repair cost of the damage; (3) it is undisputed that the vehicle which appellee purchased was "new" within the meaning of R.C. 4517.01(C); (4) it is undisputed that the retail repair cost of the prior damage to the vehicle exceeded $300 and that it amounted to between $3,900 and $4,000; (5) it is undisputed that appellant had actual knowledge of the damage to the vehicle prior to obtaining appellee's signature on the purchase agreement and failed, prior to obtaining such signature, to disclose the extent of damage; (6) there remains no genuine issue of any material fact and, when construing the evidence most strongly in favor of appellant, reasonable minds can only conclude that appellant committed an unfair and deceptive act or practice in violation of R.C. 1345.02 by virtue of violating Ohio Adm.Code 109:4–3–16(B)(14); and (7) appellee was entitled to summary judgment as a matter of law.

Accordingly, appellant's first assignment of error is not well taken.

In its second assignment of error, appellant contends that even if it is found to have violated R.C. 1345.02, it was error for the trial court to grant the remedy of rescission and attorney fees. In support, appellant argues: (1) by driving the car over 9,000 miles in the five- to six-month period between purchase and revocation, appellee is prohibited by R.C. 1345.09(C) from bringing an action for rescission, because revocation did not take place within a reasonable time and before any substantial change occurred in the condition of the vehicle; (2) there is no evidence that appellant knowingly committed an act or practice that violated R.C. Chapter 1345, as required by R.C. 1345.-09(F)(2) and defined by R.C. 1345.01(E), to justify an award of attorney fees; and (3) R.C. 1345.11(A) prohibits an award or attorney fees or rescission of the transaction where a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

Appellee responds: (1) appellant's policy was not reasonably calculated to avoid an error, but to perpetuate one; (2) appellant was aware of the existence of a rule requiring disclosure of the extent of damage and good faith requires appellant to have familiarized itself with the requirements of the rule; (3) revocation is an appropriate remedy because appellee has lost faith in the integrity and reliability of the vehicle after learning the true extent of damage to it; and (4) failure of appellant to familiarize itself with the requirements of a rule, the existence of which is known to appellant, amounts to a knowing violation and justifies an award of attorney fees.

The issue presented under appellant's second assignment of error is whether, having established that appellant committed an unfair or deceptive act or practice in violation of R.C. 1345.02, the trial court erred in granting appellee the right of rescission and/or granting appellee attorney fees pursuant to R.C. 1345.09.

As to the remedy of rescission, R.C. 1345.09 provides:

"For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

"(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

"* * *

"(C) In any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction."

Under R.C. 1345.09(C) the time against which to judge reasonableness does not begin to run until the consumer discovers or should have discovered the defect or the unfair or deceptive act or practice of the supplier. *Cypher v. Bill Swad Leasing Co.* (1987), 36 Ohio App.3d 200, 202, 521 N.E.2d 1142, 1144. It is undisputed that revocation in this case took place immediately after discovery of the unfair or deceptive act or practice and, therefore, took place within a reasonable time pursuant to R.C. 1345.09(C). The mere driving of a motor vehicle prior to revocation does not amount to a substantial change in the condition of the vehicle within the meaning of R.C. 1345.09(C). Even where the consumer continues to reasonably utilize the car after the supplier rejects the consumer's revocation, this utilization alone, even if excessive, does not vitiate the revocation, because "[c]learly, to penalize the buyer for a predicament not of his own creation would be patently unjust." *McCullough v. Bill Swad Chrysler–Plymouth, Inc.* (1983), 5 Ohio St.3d 181, 184, 5 OBR 398, 401, 449 N.E.2d 1289, 1292.

 As to the award of attorney fees, R.C. 1345.09(F) provides that:

"The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:
" * * *

"(2) The supplier has knowingly committed an act or practice that violates this chapter."

R.C. 1345.01(E) provides that:

" 'Knowledge' means actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."

A supplier may not escape liability for attorney fees merely because of ignorance that his actions were unlawful. The supplier is liable for attorney fees if he knowingly commits the act or practice which is determined to violate the CSPA, regardless of whether the supplier knew the unlawfulness of his act at the time of its commission. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933. This court finds that although it knew the full extent of prior damage to the vehicle, appellant knowingly, by its own policy, limited disclosure of this information to a statement that the damage was in excess of $500, and thereby knowingly committed an act or practice that violates the CSPA.

 As to bona fide error, R.C. 1345.11(A) provides that:

"In any case arising under Chapter 1345. of the Revised Code, if a supplier shows by a preponderance of the evidence that a violation resulted from a

bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the supplier under division (D) of section 1345.07 of the Revised Code, no party shall be awarded attorney's fees, and monetary recovery shall not exceed the amount of actual damages resulting from the violation."

In order to utilize R.C. 1345.11(A), the supplier must show by a preponderance of the evidence that an error was bona fide and that it maintained procedures reasonably adopted to avoid the error, *Katz v. G.C. Murphy Co.* (Jan. 31, 1979), Mahoning App. No. 78 C.A. 166, unreported, and neither good faith nor substantial compliance is itself a defense. *Martinez v. Decorators Warehouse, Inc.* (1983), 14 OBR 219, 223–224.

Upon consideration of appellant's contention that its violation of Ohio Adm.Code 109:4–3–16(B)(14) and of R.C. 1345.02 resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, this court finds that appellant's policy to tell the buyer of a new car that it sustained damage in excess of $500, but withhold information as to the actual extent of such damage, is not a procedure "reasonably adopted to avoid the error" of failing to disclose the extent of damage, but rather the error occurred as a result of actions in compliance with those procedures.

Accordingly, appellant's second assignment of error is not well taken.

Upon consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Sandusky County Court of Common Pleas is affirmed. Costs to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.